# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER CALIB BROWN, DANIEL RAY MOTT, and TATTOOED MILLIONAIRE ENTERTAINMENT, LLC, ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 2:20-cv-02415-TLP-cgc |
| HANOVER AMERICAN INSURANCE COMPANY, INC., GOODMAN-GABLE-GOULD ADJUSTER/INTERNATIONAL, INC., LMG, INC., and COASTAL TECHNICAL SERVICES, LLC, ) ) ) ) ) ) ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Pursuant to Order Referring Motion to Reassign to Clerk for Report and Recommendation (Case No. 2:20-cv-02415, ECF No. 27), the Clerk of Court has been instructed to make a determination and recommendation regarding the pending Motion to Reassign (Case No. 2:20-cv-02415, ECF No. 24) filed by Defendants Hanover American Insurance Company ("Hanover"), LMG, Inc. ("LMG"), and Coastal Technical Services, LLC ("CTS") (collectively "the Hanover Defendants").

## PROCEDURAL BACKGROUND

On October 14, 2016, Hanover American Insurance Company filed its Complaint for Declaratory Judgment and for Recovery of Insurance Claim Payments and Damages against Tattooed Millionaire Entertainment, LLC ("TME"), Christopher C. Brown ("Brown"), Daniel R. Mott ("Mott"), and John Falls. This case was randomly assigned to District Judge Jon P. McCalla and Chief Magistrate Judge Tu M. Pham under Case No. 2:16-cv-02817 ("Original Action"). This

1

Complaint, and other subsequently filed amended complaints, were superseded by the January 12, 2018 filing of Hanover's Third Amended Complaint for Declaratory Judgment and for Recovery of Insurance Claim Payments and Damages, naming Goodman-Gable-Gould Company d/b/a Goodman-Gable-Gould/Adjusters International ("GGG") a defendant.  The Original Action was concluded, in part, by jury trial and subsequent appeal as to the issue of liability and the trial as to damages remains pending.

On June 12, 2020, Brown, TME, and Mott (collectively "the Brown Plaintiffs") filed their Complaint against the Hanover Defendants plus GGG.  As counsel for the Brown Plaintiffs did not indicate on the Civil Cover Sheet that there were any related cases pending in this Court, this case was randomly assigned to District Judge Thomas L. Parker and Magistrate Judge Charmiane Claxton under Case No. 2:20-cv-02415 ("Instant Action").

On September 28, 2020, the Hanover Defendants filed their Motion to Reassign requesting that the Instant Action be reassigned to District Judge Jon P. McCalla as a companion case to the earlier filed Original Action.  Such Motion to Reassign is not opposed by co-defendant GGG but is opposed by the Brown Plaintiffs.

On October 15, 2020, District Judge Parker issued his Order Referring Motion to Reassign to Clerk for Report and Recommendation pursuant to Local Rule 83.8(c) which states, in relevant part, that "[c]ounsel shall inform the clerk whenever companion cases appear to be assigned to different judges.  The complaint shall be examined in the more recent action and it shall be determined whether the case is companion to or likely to be tried with one already pending."  W.D. Tenn. L.R. 83.8(c).

## ANALYSIS

As the Hanover Defendants correctly note in their Memorandum in Support of Motion to Reassign, the Court's Local Rules do not define what constitutes a "companion case."  As such, the

Hanover Defendants relied upon the definition of a "companion case" adopted by the Eastern District of Michigan as stated in <u>Nat'l Solid Wastes Mgmt. Ass'n v. Granholm</u>, 315 F.Supp. 2d 867 (E.D. Mich. 2004)[1]:

> Companion cases are those cases in which it appears that . . . the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

(No. 2:20-cv-02415, ECF No. 24-2 at PageID 291, quoting <u>Nat'l Solid Wastes</u> at 869, citing E.D. Mich. L.R. 83.11(b)(7)(A)).  As the Brown Plaintiffs did not oppose this definition of a companion case and indeed themselves relied upon it in their Memorandum in Opposition to Motion to Reassign, and as this definition provides a reasoned basis for case reassignment, it will serve as the grounds upon which to assess the Hanover Defendants' request for reassignment.

The Hanover Defendants contend that the Original Action and the Instant Action "arise out of the same occurrence and transaction – the November 5, 2015, fire, and Hanover's handling of Plaintiffs' insurance claims.  The Original Action and the claims in the [Instant Action] also involve most of the same parties, TME. [sic], Brown, Mott, GGG and Hanover."  (No. 2:20-cv-02415, ECF No. 24-2 at PageID 291).

The Brown Plaintiffs, on the other hand, contend that "[o]ther than the fact that the [Original Action] was litigation between some, but not all, of the same parties, the cases have nothing in common which can serve as the basis as classifying them as companion cases.  In addition, the legal issued [sic] presented in the [Instant Action] are not the same or similar to those presented in the [Original Action]."  (No. 2:20-cv-02415, ECF No. 26 at PageID 473).

---

[1] It should be noted that while Local Rule 83.11(b)(7)(A) for the Eastern District of Michigan has undergone some grammatical and structural edits, the substance of the Rule remains unchanged from the iteration relied upon by the Hanover Defendants in their Motion to Reassign.

In order to properly evaluate whether these two cases are companion cases for purposes of reassignment under Local Rule 83.8(c) it is necessary to understand the facts and issues raised in each cause of action.

*Original Action (Case No. 2:16-cv-02817: Hanover American Insurance Company v. Tattooed Millionaire Entertainment, LLC, Christopher C. Brown, Daniel R. Mott, John Falls and the Goodman-Gable-Gould Company d/b/a Goodman-Gable-Gould/Adjusters International)*

According to Hanover's Third Complaint for Declaratory Judgment and for Recovery of Insurance Claim Payments and Damages, in February 2015 Defendant Brown completed and submitted a Commercial Insurance Application with Plaintiff on behalf of Defendant TME, for which Defendant Brown is the sole member, officer and owner, in connection with a recording studio operating out of 898-904 Rayner Street, Memphis, Tennessee ("Insured Premises") and certain business personal property, broadly characterized as recording equipment, located therein. Defendant Brown signed the application and attested that "[a]ll values and location information are correct to the best of my knowledge." (Case No. 2:16-cv-02817, ECF No. 197 at PageID 5861.) Relying on such application Plaintiff issued a policy to Defendants Brown/TME for the period February 6, 2015 to February 6, 2016, providing insurance coverage for the building, the business personal property, and loss of business income.

In April 2015, both Defendant Mott and Defendant Falls completed and submitted Commercial Insurance Applications with Plaintiff in connection with their leasing of studio space and recording equipment at the Insured Premises. Defendant Mott and Defendant Falls each signed their respective applications, attesting therein to the values placed on the business personal property to the best of their knowledge. Relying on such applications, Plaintiff issued policies to each Defendant Mott and Defendant Falls for a term from April 10, 2015 to April 10, 2016, and April 9, 2015 to April 9, 2016, respectively, providing insurance coverage for certain business personal property and loss of

business income.  Under both policies Defendants Brown/TME were listed as loss payees in respect to the business personal property.

On November 5, 2015, an arson fire occurred at the Insured Premises causing damage to the Insured Premises and business personal property therein.  In addition to damage caused by the arson fire, the Defendants later informed Plaintiff that a burglary/theft had also occurred at the Insured Premises resulting in additional loss of business personal property.  Based upon the damage and loss stemming from the arson fire and theft, the insured Defendants each submitted claims for damages under their respective policies.

On November 9, 2015, the insured Defendants hired GGG to act as their public adjuster on their claims.  On November 10, 2015, Defendant GGG sent a letter to Engle Martin & Associates, the third-party claims adjuster hired by Hanover to investigate the claim, asking to be included as a payee on all loss drafts.

In support of their claims, the insured Defendants submitted to Hanover, by and through Defendant GGG, documentation purporting to show the acquisition of lost or damaged business personal property and to document their loss of business income.  In the course of Plaintiff's investigation into the insurance claims, Plaintiff determined that certain portions of this documentation was fabricated, falsified, counterfeit and fraudulent and, accordingly, concluded that certain items of the business personal property had never been purchased and were never at the Insured Premises and that the recording contracts supporting the insured Defendants' loss of business income claim did not exist.  Indeed, Defendant Brown later admitted to submitting to Hanover, via Defendant GGG, fraudulent documentation, i.e., falsified invoices and bank statements, in support of his insurance claim.

In response to these findings, broadly speaking, Plaintiff sought to rescind the insured Defendants' respective policies on the basis that they made material misrepresentations and concealed material information in the application process and in the presentation of claims to Hanover. Plaintiff further sought to recover payments it had already made to Defendants based upon the insured Defendants' misrepresentations and fabricated and fraudulent insurance claims and Defendant GGG's reckless disregard and failure to exercise due diligence to verify the validity of the documentation provided by the insured Defendants' in the adjustment of their claims.

The trial in this matter was bifurcated with the trial on the issue of liability and damages being tried to a jury in November 2018 and the trial on the amount of attorney's fees, costs, and claim-related expenses incurred by Plaintiff in its investigation of Defendants' claims still pending a trial date. The outcome of this trial and the subsequent appeal are not relevant to determining whether these are companion cases.

*Instant Action (Case No. 2:20-cv-02415: Christopher C. Brown, Tattooed Millionaire Entertainment, LLC, and Daniel R. Mott v. Hanover American Insurance Company, Goodman-Gable-Gould Adjusters, LMG, Inc., and Coastal Technical Services, LLC)*

According to the Brown Plaintiffs' Complaint and RICO Statement, Plaintiffs Brown/TME and Plaintiff Mott entered into property and casualty insurance policies as detailed above. The Brown Plaintiffs' Complaint and RICO Statement further confirm the details of the arson fire and theft that triggered the filing of their insurance claims with Defendant Hanover under those policies. The Brown Plaintiffs' contend that upon the filing of their respective claims, Defendants formed an enterprise with the intention of denying the Brown Plaintiffs' insurance claims and destroying Plaintiff Brown's and Plaintiff Mott's recording businesses, committing the predicate acts under the RICO statute of mail fraud, wire fraud, and the interstate transportation of stolen or converted property.

In support of these claims, the Brown Plaintiffs' assert that soon after the November 5, 2015, arson fire and theft, Defendant Hanover made the decision to deny the Brown Plaintiffs' claims but, in spite of this decision and in order to further their dual objectives of denying the Brown Plaintiffs' a recovery under their respective insurance policies and destroying Plaintiff Brown's and Plaintiff Mott's recording businesses, Defendants continued to act as an enterprise and in a manner to give the Brown Plaintiffs false reassurance that their claims would be adjusted in good faith. According to the Brown Plaintiffs, these false representations continued until Defendant Hanover filed its Complaint for Declaratory Judgment and for Recovery of Insurance Claim Payments and Damages on October 14, 2016 (the Original Action). In reliance on these assurances, the Brown Plaintiffs allege that they failed to protect their interests by taking legal action against Hanover for acting in bad faith and by continuing to expend time and money towards their respective recording businesses.

In support of their RICO claims, the Brown Plaintiffs point to numerous email, telephone, and text message communications by and between Defendants concerning the Brown Plaintiffs' insurance claims; the wiring or mailing of funds via the U.S. Postal Service by and between Defendant GGG and Defendant Hanover; and the Defendants' theft and or conversion and relocation of certain undamaged or salvageable business personal property from the Insured Premises to an out-of-state storage facility.

### *Hanover Defendants' Motion to Reassign*

Turning now to the Hanover Defendants' Motion to Reassign, as discussed above, for purposes of this Report and Recommendation the Clerk of Court will analyze such Motion using the following definition of a companion case borrowed from the Eastern District of Michigan and relied upon by both parties:

> Companion cases are those cases in which it appears that . . . the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

(No. 2:20-cv-02415, ECF No. 24-2 at PageID 291, quoting *Nat'l Solid Wastes* at 869, citing E.D. Mich. L.R. 83.11(b)(7)(A)).

While both the Hanover Defendants and the Brown Plaintiffs agree upon the existence of parties in common (i.e., Brown, TME, Mott, GGG, and Hanover), the two sides do not agree that the cases arise out of the same transaction or occurrence. In this regard, while the Hanover Defendants identify the "transaction or occurrence" as the November 5, 2015, arson fire and Hanover's handling of Brown, TME, Mott, and Falls insurance claims thereafter, the Brown Plaintiffs argue that the relevant transaction or occurrence is not "the underwriting and issuance of the insurance policies or the adjusting and denial of the claims." (Case No. 2:20-cv-02415, ECF No. 1 at PageID 3). Rather, the Brown Plaintiffs contend that the transaction or occurrence is "the conduct of Hanover and the other defendants in stealing and/or converting cash and equipment having a value in excess of $4 million in violation of the RICO act." (Case No. 2:20-cv-02415, ECF No. 26-1 at PageID 478).

It is the opinion and recommendation of the Clerk of Court that in addition to a similarity in parties, there is also a similarity in occurrences. While the Brown Plaintiffs are correct that where the Original Action is focused on the alleged misdeeds of Brown, TME, Mott, Falls, and GGG in the application for insurance and claims made thereunder, the Instant Action is focused on the alleged misdeeds and collusion of Hanover, GGG, TMG, and CTS in an effort to deny the claims made by Brown, TME, and Mott and destroy their recording businesses, these undeniable differences concern the *issues* presented in both cases rather than the transactions or occurrence which gave rise to the case. In that regard, it is the Clerk of Court's opinion that while the issues presented are indeed distinct, i.e., the commission of insurance fraud versus the formation of a criminal enterprise, the

occurrence giving rise to both the Original Action and Instant Action were the same, namely, the issuance of insurance policies by and between Hanover and Brown, TME, Mott, and Falls, and the claims made against such policies after the November 5, 2015, arson fire and burglary/theft. Neither of these causes of action exist without this relationship.

The Clerk of Court feels obligated to note in passing that the Brown Plaintiffs further argued against a reassignment of the Instant Action on the basis that such a reassignment would not promote docket and judicial efficiency. In so arguing, it appears that the Brown Plaintiffs' conflated the two bases upon which the plaintiff in *Nat'l Solid Wastes Mgmt. Ass'n* sought a reassignment of its case. In that case, the plaintiff sought a reassignment under two separate provisions of that Court's Local Rules, one on the basis that the two cases at issue were companion cases and the other on the basis that a reassignment would promote docket efficiency. These two provisions are separate and there is no requirement that companion cases must meet the additional requirement of promoting docket efficiency in order to warrant reassignment.

## CONCLUSION

Based upon the foregoing analysis, the Clerk of Court is of the opinion that these cases should be classified as companion cases as contemplated by Local Rule 83.8(c) and, in accordance with such Local Rule, this matter should be reassigned to District Judge McCalla as the Judge of the original companion action.


Respectfully Submitted,


s/ Thomas M. Gould
Thomas M. Gould
Clerk of Court

Dated: October 27, 2020

9