# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **CHRISTOPHER C. BROWN, TATTOOED MILLIONAIRE ENTERTAINMENT, LLC, and DANIEL R. MOTT**, <br><br> Plaintiffs, <br><br> v. <br><br> **HANOVER AMERICAN INSURANCE COMPANY, GOODMAN-GABLE-GOULD COMPANY, LMG, INC., and COASTAL TECHNICAL SERVICES, LLC** <br> Defendants. | Case No. 2:20-cv-02415 |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Before the Court is Defendant Hanover American Insurance Company ("Hanover"), LMG, Inc. ("LMG") and Coastal Technical Services, LLC ("CTS") (collectively, "Hanover Defendants") Motion to Dismiss, filed September 28, 2020. (ECF No. 25.) Also before the Court is Defendant Goodman-Gable-Gould Adjusters' ("GGG") Memorandum in Support of Motion to Dismiss, filed August 31, 2020.[1] (ECF No. 20.) Defendants ask the Court to dismiss the Complaint filed by Christopher C. Brown ("Brown"), Tattooed Millionaire Entertainment, LLC ("TME"), and Daniel Mott ("Mott") (collectively, "Plaintiffs") in this case. For the reasons below, Defendants' Motion to Dismiss is **GRANTED**. This case is hereby **DISMISSED WITHOUT PREJUDICE**.

---

[1] The Hanover Defendants and GGG are collectively referred to as "Defendants."

1

### I. Background

#### a. Factual History and Assertions

Plaintiffs Brown and Mott are adult residents of Tennessee, and Plaintiff TME is a single member limited liability company organized under the laws of Tennessee. (Complaint, ECF No. 2 ¶¶ 3–5.) On or about November 20, 2014, Brown purchased the real property located at 904 Raynor Street, Memphis, TN, upon which was located a building being used as a recording studio. (Id. ¶ 11.) Brown is asserted to have purchased recording equipment and fully equipped the three recording studios located in the building, leasing one of these studios to Mott. (Id. ¶ 12.) On or about February 6, 2015, TME purchased a property and casualty insurance policy from Hanover to insure the building, contents, and the business against loss. The policy covered the building against loss for up to $4.65 million, the contents in Studio A against loss for $5.5 million and insured against business income loss. (Id. ¶ 13.) Mott also purchased an insurance policy from Hanover for business losses and recording equipment located in Studio C—which he was leasing from Brown and TME—for up to $2.5 million. (Id.) On November 5, 2015, there was a fire in the building, and it was also asserted that vandals had broken into the building. (Id. ¶ 14.) Brown gave notice of the loss to Hanover on the day of the fire. (Id. ¶ 16.)

On or about November 6, 2015, Keith Hayman, a claims adjuster employed by GGG, met with Brown. (Id. ¶ 17.) On or about November 15, 2015, Gary Barkman, a Senior Claims Manager for Hanover, visited the recording studios to begin the loss adjustment process, and indicated that Hanover would not pay the claim without documentation containing the description, date of purchase, and seller for each piece of equipment. (Id. ¶ 21.) Brown asserted that any documentation was on a laptop computer that had been stolen from the property after the fire, and relayed this information to Hayman, the claims adjuster from GGG, a Maryland corporation. (Id.

¶¶ 21–22.) Brown asserts that he then requested that the insurance broker provide invoices from different vendors listing the dates of purchase, the vendors, descriptions of equipment, and purchase prices for equipment in the studios. (Id. ¶ 22.) Notably, the dates of purchase, vendor, and purchase price for the equipment on these invoices were false. (Id.)

On or about November 6, 2015, Coastal Technical Services, LLC ("CTS"), a Georgia LLC, was hired by Hanover to inspect the equipment and determine which equipment was a total loss and which equipment could be repaired. (Id. ¶ 24.) Hanover also hired LMG, Inc., a Florida corporation to inspect the equipment. (Id. ¶ 25.) Plaintiffs allege that as of June 2016, Hanover had no intention of making a payment for the BPP, but continued to assure Plaintiffs that their claim was being processed and investigated. (Id. ¶ 29.) In June 2016, Brown was in discussions with representatives from GGG and Hanover regarding removal of the equipment so that it could be repaired in a climate-controlled warehouse. (Id. ¶ 30.) Brown signed an authorization that authorized removal of the equipment, but alleges that the authorization required keeping the equipment in the Memphis area. (Id.) On or about July 28, 2016, CTS and LMG loaded the equipment onto an 18-wheeler and moved the equipment to a warehouse in Orlando, Florida, where it remains. (Id. ¶ 31.) Plaintiffs allege violations of the RICO Act §§ 1962(b), 1962(c), and 1962(d). (ECF No. 2-2 at PageID 55.) Plaintiff alleges that Hanover committed the predicate acts of mail fraud in violation of 18 U.S.C. § 1342, wire fraud in violation of 18 U.S.C. § 1343, and transportation of stolen goods in violation of 18 U.S.C. § 2314. (ECF No. 2 ¶¶ 41, 42, 46.)

   b. **Procedural Background**

This action stems from an original action for declaratory judgment filed by Hanover in Hanover American Ins. Co. v. Tattooed Millionaire Entertainment, LLC, Case No. 2:16-cv-02817 (W.D. Tenn. 2016) ("Hanover I"). Relatedly, Hanover also filed an interpleader action following

3

appeal of Hanover I in this Court.  See Hanover American Ins. Co. v. Tattooed Millionaire Entertainment, LLC, Case No. 2:20-cv-02834 (W.D. Tenn. 2020) ("Hanover II").  Plaintiffs filed this RICO Action on June 12, 2020.  (ECF No. 1.)  Defendant GGG filed a Motion to Dismiss on August 31, 2020.  (ECF No. 19.)  Defendants CTS and Hanover filed a Motion to Dismiss on September 28, 2020.  (ECF No. 25.)  Plaintiffs filed a Response in Opposition on October 26, 2020.  (ECF No. 36.)  Defendants CTS and Hanover filed their Reply to Plaintiffs' Response on November 9, 2020.  (ECF No. 40.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)).  A motion to dismiss only tests whether the plaintiff has pleaded a cognizable claim and allows the court to dismiss meritless cases which would waste judicial resources and result in unnecessary discovery.  Brown v. City of Memphis, 440 F.Supp.2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  If a court decides that the claim is not plausible, the case may be dismissed at the pleading stage.  Iqbal, 556 U.S. at 679.  "[A] formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level."  Ass'n of Cleveland Fire

4

Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A complaint need not contain detailed factual allegations. Twombly, 550 U.S. at 570. A plaintiff without facts who is "armed with nothing more than conclusions," however, cannot "unlock the doors of discovery." Iqbal, 556 U.S. at 678-79; Green v. Mut. of Omaha Ins. Co., No. 10-2487, 2011 WL 112735, at *3 (W.D. Tenn. Jan. 13, 2011), aff'd 481 F. App'x 252 (6th Cir. 2012).

In cases alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "In order to allege fraud with particularity, the plaintiffs, at a minimum, must 'allege the time, place, and content of the alleged misrepresentation on which [they] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" Heinrich v. Waiting Angels Adoption Servs., 668 F.3d 393, 403 (6th Cir. 2012) (internal citations omitted). Furthermore, "[w]hen pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'": Heinrich, 668 F.3d at 404 (internal citations and quotations omitted).

### III. ANALYSIS

#### a. Plaintiffs Have Failed to Allege a Plausible RICO Claim

Plaintiff alleges violations of RICO under §§ 1962(b), 1962(c), and 1962(c), which provide the following:

5

> **§ 1962(b):** It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> **§ 1962(c):** It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> **§ 1962(d):** It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. §§ 1962(b)–(d).

"A violation of the [RICO] statute requires '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Heinrich, 668 F.3d at 404 (citing Sedima, SP.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)). Furthermore, this Court has provided that there are "[f]ive elements [] common to all RICO violations: (1) the commission of at least two predicate RICO offenses; (2) the predicate offenses formed a 'pattern of racketeering activity'; (3) the existence of an 'enterprise' as defined under RICO; (4) a connection between the pattern of racketeering activity and the enterprise; and (5) damages resulting from the RICO violation." Bailey v. Memphis Bonding Co., Inc., Case No. 18-2115, 2019 WL 1300092, at *3 (W.D. Tenn. Mar. 21, 2019) (citing 18 U.S.C. § 1962(a)–(c); VanDenBroeck v. CommonPoint Mort. Co., 210 F.3d 696, 699 (6th Cir. 2000), abrogated on other grounds by Bridge v. Phx. Box & Indem. Co., 553 U.S. 639 (2008)).

The Hanover Defendants assert that Plaintiffs have failed to adequately allege the existence of an enterprise, or a pattern of racketeering activity. The Court agrees.

i. **Plaintiffs Have Failed to Allege an Enterprise**

Plaintiffs allege an enterprise consisting of Hanover, GGG, LMG, and CTS. (ECF No. 2-2 at PageID 55.) Plaintiffs further allege that "[e]ach of the Defendants acted with the specific intent to participate in the overall RICO enterprise[,]" which "was directed and controlled by Hanover" with "each of the members of the enterprise willfully participat[ing] in the activities of the enterprise including, but not necessarily limited to, acts of wire fraud, mail fraud and the interstate transportation of stolen or converted property." (Id. at PageID 62.)

The Supreme Court has not defined the outer boundaries of a RICO enterprise, but has explained that "'an enterprise includes any union or group of individuals associated in fact' and that RICO reaches 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" Boyle v. United States, 556 U.S. 938, 944 (2009) (citing United States v. Turkette, 452 U.S. 576, 580, 583 (1985)). This sort of enterprise can be proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Turkette, 452 U.S. at 583. "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle, 556 U.S. at 946. An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." Turkette, 452 U.S. at 583. The Sixth Circuit has further elaborated on this standard, finding that "[a]n association-in-fact enterprise can be proven by showing 1) that the associated persons formed an ongoing organization, formal or informal; 2) that they functioned as a continuing unit; and 3) that the organization was separate from the pattern of racketeering activity in which it engaged." VanDenBroeck v. CommonPoint

7

Mortg. Co., 210 F.3d 696, 699 (6th Cir. 2000), abrogated on other grounds by Bridge v. Phoenox Bond & Indem. Co., 553 U.S. 639 (2008).

Plaintiffs' allege that the "purpose of the enterprise was to manufacture facts to be used by Hanover to deny the insurance claims of the Plaintiffs and to destroy and injure the music and recording business conducted by the Plaintiffs at the insured premises." (ECF No. 2-2 at PageID 71.) Furthermore, Plaintiffs' RICO Statement asserts that "Defendants have engaged in a scheme to increase the profits of Hanover and to injure and destroy the businesses by removing all of the equipment from the building, to deprive the Plaintiffs of its use [by] [*sic*] transporting the equipment across state lines to a warehouse in Orlando, Florida." (Id.) Plaintiffs' allegations of an enterprise fail for multiple reasons. For one, as noted by Defendants, Hanover and GGG are an insurance company and public adjusting company, respectively, meaning that they are adverse to one another by the nature of their business. (ECF No. 25-1 at PageID 373.) Furthermore, GGG would have received a percentage of Plaintiffs' insurance proceeds. (Id.)

Even if the Court were to take Plaintiffs' fraud allegations as true, "simply conspiring to commit a fraud is not enough to trigger [RICO] if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes." VanDenBroeck, 210 F.3d at 699. Here, this allegation is not plausible. The Defendants consist of a public adjusting firm, an insurance company, an engineering service firm, and a technical service firm (ECF No. 25-1 at PageID 373), and Plaintiffs have not pointed to any allegations of an organizational structure or coordinated activity by the alleged enterprise that suggests that they would be able to function as a racketeering organization outside of a single alleged instance of fraud. Defendant GGG further asserts that "[t]here are no facts plead as to the common

8

purpose of the asserted enterprise, or that this was a structured entity functioning as a continuing unit." (ECF No. 20 at PageID 131.) Even in a case involving multiple instances of fraud, this Court has found a failure to allege an enterprise where the allegations lacked a chain of command and structure:

> Although Mangrum baldly contends that the organization was separate from the racketeering activity, the factual allegations in the Amended Complaint at best show that Argent, Long Beach, Carteret, and Orange conspired with Sayegh, Kebede, and Beruk, to commit fraud repeatedly over the course of a one to three year period. The allegation that they worked 'in tandem' with Sayegh, Kebede, and Beruk on these transactions, even if true, would not demonstrate that they formed an organization that existed independently of those acts of fraud. Furthermore, there are no allegations that there was a chain of command among the Defendants, the hallmark of any organization. Therefore, the Amended Complaint must be dismissed as to Argent, Long Beach, Carteret, and Orange, because the Plaintiff has failed to allege any facts that would establish that they were part of an association-in-fact enterprise pursuant to 18 U.S.C. § 1964(4).

Mangrum v. Kebede, Case No. 05-2979-B, 2007 WL 9706332 (W.D. Tenn. Sept. 20, 2007).

Here, Plaintiffs have only generally asserted that Hanover was "directing" the parties to act, but has not made any allegations with particularity, nor have they pointed to any organizational structure to suggest that there was an enterprise independent of a single act of fraud. Accordingly, Plaintiffs have failed to allege an enterprise as required under RICO. Defendants' Motion to Dismiss is **GRANTED**.

### ii. Plaintiffs Have Not Identified A Pattern of Racketeering Activity

Plaintiffs have not adequately alleged predicate acts of mail fraud and wire fraud. Pleading "racketeering activity" requires the commission of a predicate act. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 495 (1985). Specifically, pleading a pattern of racketeering activity requires the commission of at least two predicate offenses. J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 236 (1989). Here, Plaintiffs contend that Defendants committed mail fraud in violation of 18 U.S.C.

9

§ 1342, wire fraud in violation of 18 U.S.C. § 1343, and transport of stolen goods in violation of 18 U.S.C. § 2314. (ECF No. 1 ¶¶ 41–42.) With respect to mail fraud and wire fraud, Plaintiffs point to the following:

> On May 17, 2016, Keith Hayman, representing GGG wrote an email to Gary Barkman, Hanover's representative, purporting to file the claims for Business Personal Property losses, even though it was known by Hayman and Barkman that Hanover was not going to pay the claims. Brown, Mott and Falls were copied on the email, so that they would believe that progress was being made to settle the claims.

(ECF No. 36-1 at PageID 519–520.)

As the Hanover Defendants point out however, the plausibility for this allegation fails because Hanover did in fact pay the insurance claims. Hanover Defendants note that "[i]t was only after Hanover discovered that it had been defrauded by the plaintiffs that Hanover filed suit to recover the amounts paid to the plaintiffs in connection with their fraudulent insurance claims." (ECF No. 40 at PageID 542.) To the extent that Plaintiffs are alleging that Hanover never intended to pay the claims because they planned on filing suit to recover, this also fails plausibility. For one, Plaintiffs have not articulated with specificity any intent to defraud—they have simply stated that Hanover knew it was not going to pay the claims. Furthermore, as argued by Hanover Defendants, "[t]his would require Hanover to believe that it could fraudulently recover the amounts paid through litigation, and would also require GGG to be fully aware of this scheme by Hanover and for GGG to be participating in and facilitating [in] [*sic*] the scheme." (Id.) Defendant GGG also notes that Plaintiffs merely "assert that GGG has engaged in wire and mail fraud when 'on information and belief' they paid their settlement amount to Hanover after having settled Hanover's claims against it to disgorge payments received from Brown." (ECF No. 20 at PageID 133.) The Court agrees with GGG that "[t]here is no pleading or facts to establish that GGG engaged in a scheme or artifice to defraud" and that Plaintiffs have "not alleged facts to support

the element that GGG used the United States mail or wire or causing the use of such mail in furtherance of such scheme to defraud." (ECF No. 20 at PageID 135.)  It appears the only act that Plaintiffs have pointed to is a single payment made by GGG of sums paid to it by Plaintiffs. Plaintiffs have put forth no allegations to suggest that such a scheme to defraud or deceive existed, and fall well short of the heightened pleading standard required by Federal Rule of Civil Procedure 9(b).

With respect to the transportation of stolen goods under 18 U.S.C. § 2314, Plaintiffs argue that "the agreement was a part of the fraud perpetrated on the Brown Plaintiffs so Brown would sign the agreement at a time when Brown was ignorant of the fact that the equipment would be transported to Florida rather than being stored in a warehouse in Memphis." (ECF No. 36-1 at PageID 520.)  The language in the agreement however, does not say anything about the location of the warehouse or storage.  (See "Transportation Agreement," ECF No. 25-2.)  Furthermore, Hanover Defendants assert that "[t]he goods that were transported were not stolen, because TME had contracted with CTS to transport and store those goods." (ECF No. 25-1 at PageID 375.) Accordingly, Plaintiffs have not alleged the predicate offenses for mail fraud, wire fraud, or transportation of stolen goods so as to constitute two predicate offenses as required by RICO.

### b. The Issues of Res Judicata and Collateral Estoppel Are Denied as MOOT

Because the Court has ruled on Defendants' Motion to Dismiss on the merits, the Court does not reach Hanover Defendants and GGG Defendant's arguments that Plaintiff's case is barred by both claim and issue preclusion.  (See ECF Nos. 20 at PageID 136, 25-1 at PageID 369.)  Accordingly, Defendants' motions to dismiss are **DENIED AS MOOT** with respect to res judicata and collateral estoppel.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Hanover Defendants' and GGG Defendant's Motions to Dismiss. No claims remain in this case. This case is hereby **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**, this 14th day of July, 2021.

                                        /s/ Jon P. McCalla
                                        JON P. McCALLA
                                        UNITED STATES DISTRICT COURT JUDGE